OPINION
In this case, Marjorie Thill (Marjorie) appeals from the trial court's division of property during a divorce proceeding. In support of the appeal, Marjorie presents the following assignments of error:
 I. The court erred in failing to rectify Appellee's financial misconduct and dissipation of assets during the pendency of the divorce.
 II. The court erred in awarding an unequal division of assets and debts with no explanation for the inequitable division.
After reviewing the record and the applicable law, we reject the first assignment of error. However, the second assignment of error has merit, in part. Accordingly, the decision of the trial court will be reversed in part, and the case will be remanded for further consideration of the division of approximately $10,791 in marital assets.
 I
The first assignment of error relates to about $31,000 in alleged marital assets that Terance Thill (Terance) spent during the divorce proceedings. Marjorie contends that the trial court failed to adequately account for these assets. Additionally, Marjorie believes the trial court should have held Terance in contempt for dissipating the assets.
When Marjorie filed the divorce action, she obtained standard ex parte restraining orders, preventing Terance from disposing of assets. At the time the divorce was filed, the parties had about $31,500 in cash in combined accounts with the International Harvester Credit Union (IH Credit Union).
Terance was employed at Navistar, and earned $120,000 in 1999. During the same period, Marjorie worked part-time at B. Dalton, and earned about $4,000. Their income continued in about the same proportion through the divorce. The parties agreed that they both could continue to reside in the family home until the divorce was final. Consequently, while the case was pending, Terance continued to pay all family expenses, including tuition and living expenses for their college-age children, high school tuition for their son, mortgage payments on the marital home, utilities, groceries, property tax, and so forth. Additionally, per court order, Terance paid Marjorie $100 per week in temporary spousal support. Marjorie did not contribute to the household expenses, other than to purchase some food and some unspecified items for the house. Marjorie did not offer evidence of any amounts she spent on food or household items.
During the divorce proceedings, Terance used $22,000 of the money in the IH Credit Union accounts to pay for various expenses, including tuition. Terance also cashed in about $9,000 in savings bonds and used them for the same purposes. Per court order, Terance provided an account of the money he had spent. The accounting came to about $33,000, and included such amounts as $5,914 tuition to Notre Dame, $2,704 tuition to University of Dayton, $1,313 for one daughter's student loan, $4,075 tuition to Catholic Central High School, $1,195 for property taxes, $810 for Marjorie's college tuition to Wright State University, $4,000 for apartment rent and utilities for the parties' college-age daughter, $3,000 in attorney fees, $1,313 for home and car insurance, and $1,875 for spousal support. At the divorce hearing, Marjorie asked the magistrate to hold Terance in contempt for dissipating the savings bond assets, even though no motion for contempt had ever been filed.
The magistrate refused to find Terance in contempt for two reasons. First, the motion was procedurally defective because it was raised during the divorce hearing, without prior notice. Second, the magistrate noted the undisputed evidence that the bonds were to be used to finance the college education of the parties' two minor daughters, "albeit not always with the whole-hearted approval" of Marjorie. (This latter point referred to testimony that while the parties agreed to use the bonds for their children, there were times during the marriage that Marjorie wanted to spend the money on other things). The magistrate then ordered that Terance should retain the remaining $3,000 in bonds, to be used for the sole purpose of financing the college educations of the parties' two minor daughters.
Regarding the amounts in the IH Credit Union account, the magistrate found that Terance had adequately accounted for most of the funds expended. However, the magistrate did find that amounts spent on attorney fees and spousal support should not be assessed against Marjorie's share of marital funds. Therefore, the magistrate indicated that one-half of these amounts would be considered in the property division.
After Marjorie appealed from the magistrate's decision, the trial court agreed with the magistrate, except about the remaining $3,000 in bonds. Although the court felt Marjorie was insensitive to want one-half of the funds intended for her children's education, the court also believed the money had to be included as a marital asset. Accordingly, the court modified the magistrate's decision by awarding Marjorie one half of the remaining bond amount. In all other respects, the court adopted the magistrate's decision.
In claiming error, Marjorie relies mainly on the fact that Terance included the children's college and high school tuition as monthly expenses when he filed his affidavit of income and expenses with the trial court. Marjorie contends that even after paying those expenses, Terance still had almost $900 per month in net income. As a result, Marjorie believes Terance had no need to dissipate marital assets to pay for these expenses.
In this regard, R.C. 3105.171(E)(3) provides that:
 If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.
A court's decision whether to compensate an offended spouse is reviewed for abuse of discretion. See, e.g., Forster v. Forster (July 29, 1999), Cuyahoga App. No. 74137, unreported, 1999 WL 561522 at p. 3. Abuse of discretion implies that the court's attitude is "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. Additionally, the party who is offended has the burden of proving financial misconduct. Hammond v. Brown, (Sept. 14, 1995), Cuyahoga App. No. 67268, unreported, 1995 WL 546903, at p. 3.
After reviewing the record, we see no abuse of discretion. Admittedly, the trial court could not have ordered either Terance or Marjorie to use marital assets to pay for their children's education. See, e.g., Russo v. Russo, (March 16, 1998), Stark App. No. 97CA0205, unreported, 1998 WL 401760, at p. 3. However, even if support cannot be required, that does not mean a party engages in financial misconduct by paying educational expenses. Instead, each case should be evaluated based on its own facts. Using this approach, we see no evidence of misconduct in the present case. Specifically, this was a somewhat unusual divorce situation. First, although the divorce was filed in June, 2000, the parties agreed to live together until the divorce was final. That did not occur until quite some time later, in March, 2001. While the divorce was pending, the status quo was not altered in any significant respect. For example, Terance continued to pay all family expenses, including the mortgage, taxes, insurance, food, utilities, and so forth. Furthermore, Marjorie did not object to the fact that the children's tuition and college expenses were being paid. In fact, she listed these expenses on her own affidavit of income and expenses. Moreover, during the time that Terance paid for the family expenses, Marjorie lived essentially free of any obligations or expenses, except her school tuition to Wittenberg University. She did not generally use her own money, either from salary or spousal support, to benefit other family members, other than to bring food home and to buy different (unspecified) things for the house.
Likewise, no indication exists that departures were made from what normally took place in the past, i.e., the children were not suddenly enrolled in expensive private schools. Instead, from the date the divorce was filed, Terance simply continued to support the family, as he had previously done for many years. The only actual departure from routine was Marjorie's own change from a public college (Wright State University) to an expensive private college (Wittenberg).
Terance also furnished an accounting of money spent, a log from his checkbook register, and copies of his financial statements from IH Credit Union. Therefore, if money was improperly spent or was dissipated, Marjorie had the ability to prove it. However, she put no such proof into the record. Instead, she merely claimed that because Terance listed certain expenses on his affidavit of income and expenses, the same expenses could not also be paid from marital funds. We disagree.
First of all, affidavits of expenses and income are used primarily for calculating temporary support during the pendency of an action. See, Civ.R. 75(N). Admittedly, parties should try to present their best estimate so that meaningful support orders can be calculated. However, an estimate of expenses is not a guarantee that only certain expenses will arise.
Second, Terance listed various numerous items in his "accounting" that were not included on the affidavit of income and expenses, such as $810 for Marjorie's tuition to Wright State, $3,000 in attorney fees, $981 for state tax, and $560 for books for college. He also paid at least $200 more in spousal support per month than was listed in the estimate. Additionally, Terance did not include any amounts in his affidavit of expenses for utilities (gas, electric, phone, cable, trash, etc.), clothing for himself and the children, entertainment, car repairs, medical expenses not covered by insurance, and so on. In contrast, Marjorie's affidavit did list such items for the household, and attributed an additional $1,235 monthly for their payment. As we mentioned earlier, Marjorie did not pay for these expenses, except perhaps her own clothing.
Again, the record is devoid of any evidence that Terance secreted money, spent money frivolously on himself, or otherwise tried to defraud Marjorie of assets. Accordingly, we find no abuse of discretion in the trial court's failure to hold Terance in contempt. We also reject the claim that the trial court failed to adequately account for the assets.
Based on the preceding discussion, the first assignment of error is overruled.
 II
In the second assignment of error, Marjorie contends that the trial court erred in awarding an unequal division of assets and debts with no explanation for the inequitable division This argument is based on an alleged allocation of about $87,985 in assets and $102 in debts to Terance, and $45,256 in assets and $10,000 in debt to Marjorie.
As a preliminary point, we note that Marjorie's calculation of the assets awarded to Terance includes the $31,000 discussed in the first assignment of error. Since we have agreed with the trial court that this amount was not improperly dissipated, Terance's share of the assets was actually significantly less. From our review of the record, the figures used in Terance's brief appear to be correct, i.e., Marjorie was given about $46,756 in assets, as opposed to about $57,547 in assets for Terance. However, Marjorie was also given responsibility for a $10,000 student loan that would be deferred until after she graduated from college. The parties had no other significant debts.
R.C. 3105.171(B) provides that courts must divide marital and separate property "equitably between the spouses." Further, under R.C.3105.171(C), property division should be equal "unless an equal division would not be equitable, in which case the court shall divide the property in a manner that it determines to be equitable." James v. James, (1995),101 Ohio App.3d 668, 680. The starting point for allocating debt is also an equal division. Easterling v. Easterling, (Apr. 13, 2001), Montgomery App. No. 18523, unreported. As a basic guideline, the Ohio Supreme Court has stressed that "the trial court's judgment cannot be disturbed on appeal absent a showing that the common pleas court abused its discretion in formulating its division of the marital assets and liabilities of the parties." Martin v. Martin (1985), 18 Ohio St.3d 292, 294-95.
Taking the debt first, we note that Marjorie testified at trial that she did not expect her husband to directly pay for her student loans. Instead, she viewed the loan payment as an anticipated use of the spousal support she would get after graduating from college. Marjorie testified that she expected to graduate in three or four semesters (or within two years after the divorce hearing). She also said the loan payment was deferred and would not begin until a year after graduation. After hearing the testimony, the magistrate found that Marjorie should be responsible for paying her student loans.
In view of the facts of this case, we find no abuse of discretion. Although student loans have been considered marital debt, the debt may properly be allocated to the party who incurs the debt and receives the benefit. Webb v. Webb (Nov. 30, 1998), Butler App. No. CA97-09-167, unreported. Like the wife in Webb, Marjorie will receive the sole benefit of her decree, since any income she generates will be realized only after the end of the marriage. 1998 WL 820838, at p. 4. Furthermore, the record indicates that no part of the student loan proceeds was used to pay family expenses. Id. Accordingly, Marjorie was appropriately held responsible for her school loans.
Although these facts are dispositive, we also find no error when courts give parties what they request. Consequently, the trial court did not err in allocating the student loan debt to Marjorie. We also note that Marjorie chose to begin attending an expensive private college after the divorce was filed, even though she had previously attended a less costly public college for many years.
On the other hand, we do find an abuse of discretion in the allocation of marital assets. As we mentioned earlier, Marjorie received about $10,791 less in assets. Marjorie says this was inappropriate because the trial court took spousal support into account in dividing assets. According to Marjorie, the court's analysis put "the cart before the horse," since R.C. 3105.171 requires property to be divided before spousal support is allocated.
The magistrate did not say that he considered spousal support before dividing the property. Marjorie did receive a substantial amount of spousal support, i.e., $400 per week for five years ($20,800 annually). However, after Marjorie objected to the magistrate's property division, the trial court made several comments. First the court noted that Terance did not dissipate assets. Next, the court agreed that Marjorie had incorrectly inflated the value of saving bonds awarded to her husband. Then, the court said:
 Lastly, counsel for the defendant correctly points out that the Plaintiff's theory also does not take into account the spousal support which the Magistrate awarded to Plaintiff in the sum of $21,000.00 per year for a five year period of time.
After making these remarks, the court cited case law indicating that the purpose in dividing marital property is to reach an equitable result. The court also noted that an equitable property division need not be equal. Finally, the court said that after reviewing the magistrate's order in its entirety, it found more than an adequate basis to justify the magistrate's allocation. As a result, the court affirmed the magistrate's decision on the division of assets.
We agree with the trial court that an equitable division does not have to be equal. See Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 95. However, we must also agree with Marjorie that the trial court should not have considered spousal support in deciding if the property division was equitable. In this regard. R.C. 3105.171(C)(3) explicitly says that:
 [t]he court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded.
Emphasis added. Thus, the statute clearly prohibits trial courts from considering spousal support when they equitably divide property.
In responding to this issue, Terance does not discuss whether spousal support was improperly considered. Instead, Terance focuses on the fact that the magistrate was obviously aware of Terance's financial burdens as the custodial parent of the parties' sixteen year old son — burdens which Marjorie would only minimally share. Additionally, Terance says the magistrate was also aware that any equity in the home would be significantly diminished by a sale of the property.
The factors Terance mentions could have been appropriately considered by the trial court. Specifically, R.C. 3105.171(F) indicates that:
 In making a division of marital property * * *, the court shall consider all of the following factors:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factor that the court expressly finds to be relevant and equitable.
However, there is no indication in the record that the magistrate or trial court did, in fact, consider these factors when they decided to award Terance a larger share of the assets. Accordingly, we must remand this matter for further explanation. We note that the decision on remand will be limited to the $10,791 disparity in assets, and what share, if any, Marjorie is entitled to receive.
Accordingly, the second assignment of error is overruled in part and is sustained in part.
In view of the preceding analysis, the first assignment of error is overruled, and the second assignment of error is overruled in part and is sustained in part. This case is reversed in part, and is remanded to the trial court for a decision on what share, if any, Marjorie Thill is entitled to receive from $10,791 in marital assets that were awarded to Terance. In all other respects, the decision of the trial court is affirmed.
YOUNG, J. and GLASSER*, J., concur.
* Honorable George M. Glasser, Retired from the Sixth District Court of Appeals, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).